Erich D. WAGNER, Plaintiff-Appellee,

v.

RETAIL CREDIT COMPANY, a Georgia corporation, Defendant-Appellant.

No. 14562.

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1964.

Rehearing Denied Dec. 14, 1964.

Paul W. Philips, David R. Heaton and Helmke, Philips & Beams, Fort Wayne, Ind., for appellant.

Gilmore E. Haynie and J. Philip Burt, of Campbell, Livingston, Dildine & Haynie, Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Retail Credit Company, a Georgia corporation, defendant, appeals from a judgment against it in the district court for $75,000 and costs in favor of Erich D. Wagner, plaintiff.

Plaintiff is a citizen of Indiana and this case is a diversity action. Defendant is a commercial reporting agency primarily serving insurance companies. Its home office is in Atlanta, Georgia. It has been in existence 64 years. All reports are made at the request of a customer insurance company pursuant to an existing contract. Principally they concern applicants for insurance, prospective insurance agents, and insurance claims, which are the direct concern of the customer.

Defendant's brief furnishes facts which we now relate.

In February 1961 Great American Insurance Company, a customer of defendant, appointed Erich D. Wagner, plaintiff, as general agent, over the objection of Frank Wolch, its Fort Wayne field representative, who immediately ordered from defendant a report on plaintiff. The report rendered by defendant to Great American stated, *inter alia:*

"* * * Eric [*sic*] has been in prison; this happened during WW#2 period when he was involved in a car sales sceme [*sic*], sold over the O.P.A. ceiling and was entangled otherwise. Sources know that he was in prison approximately one year."

This statement was not true.

This report was prepared by William Douglas, an inspector for defendant. It was dated March 2, 1961, and three copies were forwarded to Wolch. The sole remaining copy was sent to defendant's Fort Wayne office for filing. Wolch sent the report to Mr. Hughes of Great American's Indianapolis office. Shortly thereafter, on instructions from the Chicago office of Great American, Wolch cancelled plaintiff's appointment.

Around June 1961, a copy of the report was received in plaintiff's mail from an undetermined source. On June 8, 1962, plaintiff's attorneys wrote defendant charging libel and threatening a suit. Following further correspondence between the parties, this suit was filed on August 14, 1962 and involved a single count of libel.

Following discovery proceedings, plaintiff filed successively an intervening amended complaint and a second amended complaint containing eleven libel counts and two slander counts. The case went to trial on the second amended complaint and defendant's answer which denied the two alleged slanders, asserted the defense of qualified privilege as to all libel counts and the statute of limitations as to ten of the eleven libel counts. At the conclusion of plaintiff's evidence, on defendant's motion, these ten counts of libel were dismissed by the court as barred by the statute of limitations. The jury rendered a verdict upon the three remaining counts jointly, in the amount of $75,000. Judgment was entered accordingly.

Defendant's motions for a new trial and for judgment notwithstanding the verdict were overruled and this appeal followed.

At the trial there was evidence reasonably tending to prove the facts now stated.

Plaintiff is a lifetime resident of Kendallville, Indiana, and began in the insurance business in 1931 but not until 1946 did he devote his full time thereto, when he was employed by the Wagner Insurance agency in Kendallville. In January 1958, he operated through a corporation known as Wagner Sales, Inc.

In February 1961 plaintiff was appointed agent for Great American by

district manager Hughes or Robert Jeffers and a contract was executed with Great American. Shortly afterwards, Wolch, who was against the practice of appointing an agent on the first contact and because he did not think it was an opportune time to appoint an agent, would not recommend the signing of the contract with plaintiff. After the contract was signed with plaintiff, Wolch got a report on plaintiff from defendant, but Great American had already supplied plaintiff with materials for his work as an agent and had advertised in the Kendallville newspaper of his appointment.

William Douglas, an inspector for defendant, made a report on plaintiff on March 2, 1961 and sent it to Wolch. As sources of information Douglas spoke to four local persons.[1] Douglas mailed copies of his report to the customer and to the Fort Wayne office for review.

The manager of the Fort Wayne branch of defendant knew that an O.P.A. violation was a federal matter and he knew, he testified, that all of the offices of the clerks of the United States district courts were open to defendant's inspection and that he could have walked into the office of the clerk of the district court (the court below). Defendant produced no witness who had examined federal court records.

About March 21, 1961, district manager Hughes of Great American transmitted a letter and one of his copies of the report on plaintiff to Kenneth Duffy, assistant manager of Commercial Union Insurance Co., represented by plaintiff. Thereupon a copy of Hughes' letter to Duffy and a copy of the March 2, 1961 report were mailed to plaintiff by an unknown person. After consulting with his own son, who was an attorney, and his personal attorney in Kendallville, plaintiff brought a copy of the March 2, 1961 report to his present counsel.

About June 1962 plaintiff called at defendant's Fort Wayne office, identified himself and asked for a copy of the report relating to him. It was denied. Following some correspondence between plaintiff's counsel and defendant, the latter advised plaintiff's counsel by letter that if an error had been made, a correction would be issued. That correction never occurred.

In October or November, 1962, William Hoagland, claims director of defendant's Fort Wayne office, reviewed the reports of investigators as to the details of a possible prison record of plaintiff.

---

1. Mr. Axel was called by plaintiff and he testified he could not remember talking to Douglas about plaintiff. He further testified that he had never stated as a fact, to any investigator for defendant, that plaintiff had ever been involved in any shady deals or ever served in prison.

Mr. Reichard was called by plaintiff and he testified that he had never been interviewed by Douglas regarding plaintiff, either at his home, office, by telephone or in an automobile.

Mr. Yuska testified he could not recall Douglas specifically interviewing him about plaintiff or plaintiff's background. He asserted that he would think that if he had ever discussed with Douglas whether or not a fellow insurance man had served time in a penitentiary such discussion would stick in his mind.

Mary Ellen Fraze, the daughter of Mr. Fraze listed as a source of information, was called by plaintiff as a witness and she testified that her father was now deceased, but that he had been hospitalized from February 15, 1961 to March 3, 1961, as a result of diabetes and a stroke. She stated that her father was unconscious a great deal of the time and after he regained consciousness he didn't recognize his family. On March 2, 1961, the date of Mr. Douglas' alleged interview, Mr. Fraze was confused, at times he knew the family and at other times he did not know them.

Mr. Douglas testified that in making his reports on plaintiff he did not rely upon previous investigation reports but made a determination himself as to whether or not plaintiff had served time in prison.

At no time while checking police or sheriff's records did Douglas ever find a criminal record on plaintiff. He did not check the records of the Federal Court in Fort Wayne, Indiana. He had been instructed, however, that when he had unconfirmed, unfavorable information he was to check all available sources, records and material to substantiate the unfavorable information.

One of the main purposes was to find out whether anybody had represented that plaintiff had been in prison. He made notes of what various interviewed persons said beginning in October 1962 and concluding around February or March of 1963. He interviewed possibly as many as 40 people in a day. None stated that he knew plaintiff had been in prison. When testifying Hoagland did not have a copy of his report. He stated he destroyed all the notes he had taken of what the people interviewed had told him. Hoagland could not state the name of any person in Kendallville who had heard reports or discussions with respect to the alleged fact that plaintiff was supposed to have been in prison during World War II.

During the course of Hoagland's investigation, he stated to hardware dealer Campbell in Kendallville that plaintiff had been in prison and he would like to know what Campbell could tell him about it. A similar statement by Hoagland was made in November 1962 in the presence of bank employee Forst in La Grange, Indiana.

1. Defendant contends in this court for the first time that all the evidence in the case indicates the existence of a *privileged occasion* for the sending of the report by defendant dated March 2, 1961. This report was sent to Great American Insurance Company, one of defendant's customers with whom it had a contract for such a service, in connection with plaintiff's appointment as a general agent for Great American.

To us defendant vigorously argues that the district court should have instructed the jury that the *occasion* in which the offending language was published was privileged and that it was necessary to find actual malice in order for plaintiff to recover.

■ Defendant asserts that the court's failure to so instruct is the "cardinal error" in the case. It states and reiterates in its brief that this error arose from the court's failure to distinguish between privileged *occasion* and privileged *communication*. It contends that this error led the court to refuse to instruct the jury that the occasion was privileged and, on the contrary, to instruct the jury "that privileged occasion was for the jury to determine on the basis of good faith". Actually the record shows affirmatively that neither the refused instruction nor the given instruction used the word "occasion". They both referred only to qualified privilege and communications. Now, before this court, defendant raises the issue of a privileged occasion as the cardinal error. It comes too late.[2]

■ It is axiomatic that a litigant cannot present arguments in this court which it did not present to the court below. Hazeltine Research v. Avco Mfg. Co., 7 Cir., 227 F.2d 137, 139 (1955); Hardware Mutual Ins. Co. v. C. A. Snyder, Inc., 3 Cir., 242 F.2d 64, 69 (1957); Johnson v. Universal Underwriters, Inc., 7 Cir., 283 F.2d 316, 320 (1960). See, generally, 2 Modern Federal Practice Digest 774–779.

In Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), the court said:

"Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues

2. Evidently sensing the precariousness of its shifting position in this court, defendant in its brief tortuously attempts to extricate itself by asserting that "words are not important" and that there is a distinction between what it calls the "ultimate defense of privilege" and the "intermediate factor which places on plaintiff the burden of proving malice".

upon which they have had no opportunity to introduce evidence. * * There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See Blair v. Oesterlein Machine Co., 275 U.S. 220, 225 [48 S.Ct. 87, 88, 72 L. Ed. 249]."

Defendant cannot be permitted to shift its theory after it arrives in this court. The case was tried by defendant upon the defense of privileged communication. It was so understood by the district court and on that basis the case was disposed of. The authorities which defendant now cites in an endeavor to. distinguish between privileged occasion and privileged communication simply serve to emphasize that defendant has shifted its theory upon reaching this court. We shall decide this case upon the defense presented in the district court and such arguments of counsel here as pertain to that defense. In addition, our own examination of the record convinces us that the evidence was sufficient to support the verdict and that the case was submitted to the jury after proper instructions by the court, under the law of Indiana. We find in the record before us no circumstances indicating that an injustice will result by applying this general rule. We are not required to consider a question which was neither presented to nor passed upon by the court below.

2. Defendant briefly argues, without citation of any authorities, that there is no substantial evidence that the alleged slanderous statements were ever made. We cannot agree, in view of the evidence to which we have referred in this opinion.

Defendant becomes vague when it states that "there is nothing to indicate that the jury actually did find that the alleged slanderous statements were ever in fact made".

3. We hold that the amount of the verdict is not excessive.

4. Defendant's counsel have accumulated a variety of trial court incidents whose cumulative effect they maintain was highly prejudicial to defendant. We find therein no basis for reversal.

For all these reasons, the judgment of the district court is affirmed.

Judgment affirmed.