**ELLSWORTH FREIGHT LINES, INC., an Iowa corporation, Plaintiff-Appellee,**

v.

**Oren E. CONEY, doing business as O. E. Coney Pontiac Sales, Defendant-Appellant.**

**Gerald Henry SHAW, Plaintiff-Appellee,**

v.

**Oren E. CONEY, doing business as O. E. Coney Pontiac Sales, Defendant-Appellant.**

**Nos. 15927, 15928.**

United States Court of Appeals
Seventh Circuit.
May 1, 1967.

8.  5 Moore, F.P. ¶ 44.05, p. 1519.

Arnold H. Duemling, II, J. Michael O'Hara, Barrett, Barrett & McNagny, Fort Wayne, Ind., for appellant.

Gilmore S. Haynie, Fort Wayne, Ind., Wyman Finley, Kendallville, Ind., James A. Angelone, Butler, Ind., William L. Wilks, Norman E. Baker, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for appellees.

Before SCHNACKENBERG, CASTLE and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Oren E. Coney, doing business as O. E. Coney Pontiac Sales, defendant, has appealed from that part of a judgment of the district court entered after a trial by jury, against him and in favor of Ellsworth Freight Lines, Inc., plaintiff in case No. 15927, and likewise from that part of a judgment against him in case No. 15928 in which Gerald Henry Shaw is plaintiff.

These actions seek recovery of damages resulting from the alleged negligence of Wallace Wayne Shultz in driving an automobile allegedly owned by Coney, who was charged with negligence in permitting Shultz to operate the said vehicle.[1]

Indiana law governs.

There was evidence tending to prove that plaintiff Shaw (who testified at the trial) was the only living eyewitness to the accident here involved and that he was driving a truck owned by plaintiff Ellsworth about 2:15 A.M. on August 25, 1963, in the proper traffic lane on U. S. route 6 in Indiana. Approaching Shaw was a vehicle driven by Shultz with lights in the bright position. Shaw signalled by blinking his lights several times, but the oncoming automobile, which was moving at a "good rate of speed" did not dim its lights. Shaw pulled his unit to the right-hand (south) side as far as he could and took his foot off the accelerator. The oncoming vehicle then weaved a little bit on the road and then seemed to go off the north side of the road. It then swung to the south and then back and head-on at Shaw, who swung to the left and, while in its proper traffic lane, Shaw's truck was hit by the automobile being driven by Shultz.

A test of a blood sample, taken from Shultz's body under the direction of a police officer following the accident, revealed that Shultz had a .29% blood-alcohol content. Testimony at the trial was to the effect that this finding indicated alcohol in the blood stream equal to that in approximately 13 bottles of beer or 13 one-ounce shots of high-proof whiskey.

1. Counsel for defendant contend that the district court erroneously withdrew the issue of contributory negligence from the jury. However, the tes-

---

1. The widow and personal representative of Shultz was joined as a codefendant with Coney; however, she has not appealed from the judgments in these cases.

timony of a police officer [2] and Shaw was not contradicted nor impeached. There were no other witnesses on that issue. We hold that the court's action in this regard was proper.

2. Defense counsel also contend that the district court erred in overruling defendant Coney's motion for a directed verdict, because there was no evidence that Coney knowingly permitted an unfit person (Shultz) to operate Coney's automobile. However, there is considerable evidence in the record indicating that Coney was the real owner of the automobile driven by Shultz and that the jury was correct when it gave an affirmative answer to the following special interrogatory submitted to it by the court:

"Did the defendant, Oren E. Coney, on August 25, 1963, own the 1949 Pontiac automobile driven by Wallace Wayne Shultz on the date of the accident involved in this case?"

Yet the evidence clearly shows that Coney permitted Shultz to drive the Pontiac car, although no bona fide sale of the car had been made to Shultz. His "dealer" license plates were permitted to remain on the car while Shultz drove it. Moreover, the evidence on the record justifies the inference that the habitual use of intoxicating liquor by Shultz was known to Coney. These facts, appearing in the evidence, justified the district court in refusing Coney's motion for a directed verdict.

3. In the brief of defendant an attack is made upon the giving of court instruction No. 23, reading as follows:

"At all times relevant to these cases, the law of the State of Indiana included the following provisions:

'Any owner who sells, barters, exchanges, assigns or otherwise disposes of any motor vehicle * * *

to be scrapped, dismantled, junked or otherwise destroyed, shall assign the certificate of title thereto to the person to whom such vehicle is sold, bartered, exchanged, assigned or otherwise disposed of, and such owner, at the time of executing such assignment of title, shall write or cause to be written in ink or stamped in large letters the word "junk" across the face of such [certificate of title, and the purchaser of such] vehicle described in such certificate of title shall, within five (5) days from the date of the purchase or assignment of such title, mail or deliver such certificate of title to the department. Whenever the owner of any such vehicle scraps or junks or otherwise destroys such vehicle, or has scrapped, dismantled, junked, or otherwise destroyed any such vehicle, or has in his possession any such vehicle or vehicles which such owner intends to scrap, junk or otherwise destroy, such owner shall write in ink or stamp the word "junk" in large letters across the face of the certificate of title of any such vehicle and mail or deliver such certificate of title so marked to the department. [* * *]

'Upon the sale of a motor vehicle * * * by a manufacturer or dealer, which has been registered by the manufacturer or dealer as is provided for in this act, the vendee shall be permitted to operate such vehicle, upon the public highways, for a period of not to exceed five (5) days after taking possession thereof, having attached thereto the manufacturer plate or plates of the vendor or the registration plate or plates issued to the vendee on the motor vehicle he traded to the vendor as part payment on the motor vehicle pur-

---

2. Trooper Eisenhut testified as to the physical conditions at and approaching the scene of the accident, the condition of the pavement and the weather, and the point of impact by the vehicles which collided head-on; that from the point of impact the vehicle operated by Shaw continued and came to rest 68 feet off the north side of the highway, and the Shultz car was knocked backward a distance of 100 feet; that he saw no skid marks indicating that either vehicle had applied its brakes prior to the impact or had attempted to swerve.

chased by the vendee: Provided, the vendee has in his possession a title for said motor vehicle which has been properly assigned to him and duly notarized. The manufacturer or dealer shall be jointly responsible with the vendee, for the return of the registration plates of such manufacturer or dealer if such plates are so used by vendee within such period of five (5) days. * * * '

"These provisions may be considered by you, along with all the other evidence in these cases, in determining the ownership of the automobile which was being driven by Wallace Wayne Schultz [sic] at the time of the collision involved in these cases."

■ However, some of the grounds for objection now urged to this instruction do not appear to have been presented to the district court. We have repeatedly disapproved of the shifting of argument by litigants and the adoption of a new theory, after the case reaches this court. In Wagner v. Retail Credit Company, 338 F.2d 598 (1964), at 601–602, we stated:

"It is axiomatic that a litigant cannot present arguments in this court which it did not present to the court below. Hazeltine Research v. Avco Mfg. Co., 7 Cir., 227 F.2d 137, 139 (1955); Hardware Mutual Ins. Co. v. C. A. Snyder, Inc., 3 Cir., 242 F.2d 64, 69 (1957); Johnson v. Universal Underwriters, Inc., 7 Cir., 283 F.2d 316, 320 (1960). See, generally, 2 Modern Federal Practice Digest 774–779.

* * * * * * *

"Defendant cannot be permitted to shift its theory after it arrives in this court. * * *"

Some of Coney's arguments against instruction No. 23 are too late, being asserted for the first time in this court.

It appears that in the district court Coney objected to the giving of instruction No. 23:

" * * * for the reason that there is no evidence in this case that the 1949 Pontiac automobile involved in the accident in question was ever registered in the name of the Defendant Oren E. Coney, and the second statute quoted by the Court requires for its application that the motor vehicle referred to therein be registered by the dealer. Said instruction is, therefore, an incorrect statement of the law and not applicable to the evidence in this case."

■ However, the record before us fails to support Coney's objection. There was evidence tending to show that Coney sold a Chevrolet car to one Koontz and procured from Koontz an assignment of title to and possession of a 1949 Pontiac. Under the registration statutes of Indiana, dealers are permitted to use special plates on cars acquired by them under the circumstances surrounding Coney's acquisition of the Pontiac.

Ind.Ann.Stat. § 47–2615 (Burns' 1965 Repl.Ed.) Ind.Acts 1945, ch. 304, § 38, provides:

"*Any dealer*, or manufacturer, *owning and operating any vehicle*, of the type required to be registered hereunder, upon any public highway, *in lieu of registering each such vehicle*, may obtain from the department, upon a verified application therefor and upon a form furnished by the department, and upon the payment of the fees required under the provisions of this act, registration plates having thereon a general distinctive number, and as a suffix thereto, the letter "M" and the letters IND and the registration year for which issued. * * *" (Emphasis added.)

We agree with counsel for plaintiff that it was not necessary for Coney to have separately registered the Pontiac if he used his dealer plates thereon.

For all of these reasons, the parts of judgments from which this appeal was taken are affirmed.

Affirmed.

CUMMINGS, Circuit Judge, concurs in the result.