401 F.2d 320
 DESERT PALACE, INC., Nathan S. Jacobson & Stanley Mallin, Plaintiffs-Appellants,
v.
Richard J. SALISBURY, d/b/a Diversified Insurance Agency, Defendant-Appellee.
NATIONAL REINSURANCE AGENCY, INC., Cross-Claim Plaintiff-Appellant,
v.
Richard J. SALISBURY, d/b/a Diversified Insurance Agency, Cross-Claim Defendant-Appellee.
 No. 16620.
 No. 16647.
 United States Court of Appeals Seventh Circuit.
 October 7, 1968.
 
 Richard F. Levy, Noel Kaplan, Richard V. Houpt, Chicago, Ill., for plaintiffs-appellants.
 Francis D. Morrissey, Harry J. O'Kane, Peter J. Mone, Chicago, Ill., for defendant-appellee.
 Before MAJOR, Senior Circuit Judge, and HASTINGS and CUMMINGS, Circuit Judges.
 MAJOR, Senior Circuit Judge.
 
 
 1
 This diversity action was commenced April 3, 1967, by Desert Palace, Inc. and its owners, Nathan S. Jacobson and Stanley Mallin, against Richard J. Salisbury, d/b/a Diversified Insurance Agency, and National Reinsurance Agency, Inc. (Other parties named as defendants are not here involved.) Damages were sought on an insurance binder issued in favor of plaintiffs for fire and casualty protection. Desert Palace, Inc. and its owners were residents and citizens of the State of Nevada, and the property allegedly lost and damaged was located in the same State. Salisbury was a resident and citizen of the State of Utah. National Reinsurance Agency, Inc. was a citizen and resident of the State of Illinois.
 
 
 2
 On June 7, 1967, Salisbury moved to dismiss Count II of the complaint, the only count which purported to state a cause of action against him, on the ground that the court did not have personal jurisdiction. Attached to the motion was an affidavit which stated that he was a citizen and resident of the State of Utah, that he was served with summons by the Salt Lake City sheriff and that he "is not now or at any time material to the case herein a resident of this jurisdiction."
 
 
 3
 On June 12, 1967, plaintiffs answered defendant's motion and submitted in connection therewith an affidavit by their attorney, Noel Kaplan, and a letter from Salisbury to Chase M. Smith, president of National Reinsurance Agency, Inc., Chicago, Illinois, written December 14, 1966, and mailed from Utah. In their answer plaintiffs stated:
 
 
 4
 "The facts as contained in the Affidavit of Noel Kaplan attached hereto and made a part hereof indicate that Salisbury voluntarily involved Illinois residents, was aware of the involvement, pursued the involvement and relied upon the involvement for his earnings. In such a situation it is submitted that the scope of service under Section 17(1) (a) of the Illinois Civil Practice Act, which Act governs the scope of service under Rule 4(e) of the Federal Rules of Civil Procedure allows inclusion of Salisbury as a Defendant."
 
 
 5
 This letter, written long after the fire loss for which damages were sought, reviewed the events which had transpired, concluding with the suggestion that National Reinsurance deny liability. Statements contained in the Salisbury letter furnish the sole basis for plaintiffs' contention that the relation of the parties was such as to confer personal jurisdiction on Salisbury in Illinois. The statements relied upon are, "We called you and OK'd the additional coverage on the other two warehouses, and on the strength of our conversation we issued the binder." The letter pointed out an error which had been made in the issuance of the binder, and stated, "On discovering our error we sent an amended binder to our broker in Las Vegas. In the interim the fire occurred, and we understand that the binder was never delivered."
 
 
 6
 In response to plaintiffs' answer, Salisbury noted plaintiffs' reliance on Chapter 110, Section 17(1) (a), but denied its applicability for the reason, "The plaintiff has not shown a definite act which occurred in Illinois but on the contrary shows this defendant wrote a letter in Utah and made a phone call in Utah to an Illinois resident. These acts certainly do not constitute doing business in Illinois."
 
 
 7
 On July 6, 1967, National Reinsurance filed its cross-claim against Salisbury, in which it denied liability and alleged in substance that Salisbury forged the signature of its president, Chase M. Smith, on the binder, and that it was executed without its approval, consent or knowledge.
 
 
 8
 The case was tried by the court without a jury, solely upon the pleadings, exhibits and documents filed in connection therewith. In conformity with its memorandum opinion, the court on October 31, 1967 entered its order dismissing Count II of the complaint insofar as it applied to Salisbury. From this order both plaintiffs and National Reinsurance Agency, a co-defendant of Salisbury, appeal. Pursuant to an order of this court entered January 15, 1968, plaintiffs in No. 16620, and National Reinsurance Agency, cross-claimant in No. 16647, were permitted to file a joint brief.
 
 
 9
 Illinois Revised Statutes, Chapter 110, Section 17, in pertinent part provides:
 
 
 10
 "(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, in an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:
 
 
 11
 (a) The transaction of any business within this State;
 
 
 12
 (b) The commission of a tortious act within this State; * * *."
 
 
 13
 It is clear from the record heretofore set forth that plaintiffs in No. 16620 relied solely on Section 17(1) (a) in support of their motion to deny Salisbury's motion to dismiss. At no time did they assert the commission of a tortious act in the State of Illinois under Section 17 (1) (b). That the trial court so understood is shown by its memorandum opinion. It pointed out that the only contacts Salisbury was alleged to have had in Illinois were two, "* * * he placed a phone call from Utah to National Reinsurance Agency in Chicago confirming the issuance of an insurance binder in Utah to cover * * *, a Nevada company; and he wrote a letter to National Reinsurance after the alleged loss occurred, in which he urged National to have the insurance companies deny the instant claim." The court concluded, "Personal jurisdiction over Salisbury may only be assumed by virtue of his activity within or relating to the state. Certainly it cannot be said that his writing a letter and making a phone call to an Illinois corporation regarding a contract executed in Utah, which covered a Nevada resident, is sufficient contact with Illinois to justify this court in assuming personal jurisdiction over him."
 
 
 14
 Plaintiffs cite only two cases in support of their contention that the Illinois court acquired personal jurisdiction over Salisbury. Ziegler v. Houghton-Mifflin Co., 80 Ill.App.2d 210, 224 N.E.2d 12, and a decision of this court, Consolidated Laboratories, Inc. v. Shandon Scientific Co., 7 Cir., 384 F.2d 797. An examination of those cases discloses that the facts involved were a far cry from those here.
 
 
 15
 In Ziegler, the defendant Hodges was a resident of Florida and moved to quash service of summons on the ground that he was not subject to the personal jurisdiction of the Illinois court. The motion was allowed and the court ordered dismissal of the suit. On appeal, the appellate court reversed, holding that Hodges was amenable to personal jurisdiction under Chapter 110, Section 17(1)(a) of the Illinois Statutes. In that case, the opinion discloses that Hodges from Florida made a written offer in a letter which was sent to the plaintiff in Illinois, which proposed participation with Hodges in writing a certain textbook. The consideration for plaintiff's participation was to be a percentage of the royalties received by Hodges from Houghton-Mifflin Company upon publication of the book. There were numerous long distance telephone conversations between the parties, during which plaintiff accepted Hodges' offer. The telephone conversations concerned the agreement by which Hodges was to write a portion of the book. Certain materials were sent to the plaintiff in Illinois by Hodges. Hodges' portion of the book was written in Florida and plaintiff's portion in Illinois, and the manuscript of each was sent to the other for editing and comment.
 
 
 16
 Consolidated involved an action by an Illinois distributor against British manufacturers for breach of a modified distributorship contract. Also named as defendants were a Pennsylvania corporation organized as the main distributor for the manufacturers and the Pennsylvania corporation's president and manufacturer's representative, for unlawfully inducing a breach of contract. This court, reversing the decision of the trial court, held that defendants' activities in Illinois constituted the minimum contacts sufficient to avoid offending "traditional concepts of fair play and substantial justice," and that there was a close relationship between defendants' negotiations in and visits to Illinois. This case, like Ziegler, is of no aid to plaintiffs' contention. In Consolidated, defendants' contacts with Illinois consisted of discussion and formalization of distributorship relations with an Illinois corporation, execution of an exclusive distributorship contract in Illinois, modification of that contract pursuant to negotiations carried on in Illinois and the shipping of the manufacturer's products into Illinois where they were sold and paid for.
 
 
 17
 In contrast, as already shown, in the instant case the sole contacts which Salisbury had with Illinois were the placing of a single phone call and the writing of a single letter to National Reinsurance in Chicago. He never discussed in Illinois the insurance binder in dispute, was not authorized to do business in Illinois, and did no business there. He did not advertise, solicit, sell or ship goods into that State.
 
 
 18
 We agree with the district court that under the facts of the case there was no "transaction of any business" by Salisbury within the State of Illinois and that he was not, therefore, amenable to process in that State.
 
 
 19
 Plaintiffs, however, devote a considerable portion of their argument in support of the contention that Salisbury committed "a tortious act" and is amenable to process under Par. (1) (b) of the Act. The fallacy of this argument resides in the fact that no such issue was presented to the district court. As already shown, plaintiffs in the main action, in their motion to dismiss as to Salisbury, specifically relied upon Par. (1) (a), which refers to the "transaction of any business within this State." True, National Reinsurance, a co-defendant of Salisbury, filed a cross-complaint against him, alleging a tortious act, that is, in effect that he forged the insurance binder. However, it filed no motion to dismiss the complaint and evidently acquiesced in plaintiffs' motion which was based solely on Par. (1) (a). In no way was the charge in this cross-complaint called to the attention of the court, either by plaintiffs or by National Reinsurance.
 
 
 20
 On brief plaintiffs stated, "* * * the Trial Court ought to have made itself familiar with all of the pleadings to ascertain as much of the facts as possible." We do not agree with this statement, particularly as it applies to the circumstances of this case. In our view, a trial Judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings.
 
 
 21
 We need cite only a few of the many cases which have held that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide. As was said in Occidental Petroleum Corp. v. Walker, 10 Cir., 289 F.2d 1, 6:
 
 
 22
 "It is a well-recognized rule of frequent application that a party litigant may not sit quiet at the time action is taken in the trial court and then com-complain on appeal. He is required to indicate in some appropriate manner his objection or dissent. Otherwise, no question is preserved for review on appeal."
 
 
 23
 In Wagner v. Retail Credit Co., 338 F.2d 598, 601, this court stated:
 
 
 24
 "It is axiomatic that a litigant cannot present arguments in this court which it did not present to the court below. [Citing cases.]"
 
 
 25
 This "tortious act" theory was not presented to or acted upon by the trial court and cannot be properly considered here, The court's order allowing Salisbury's motion to dismiss the complaint as to him is
 
 
 26
 Affirmed.