Charles G. ERFF, Plaintiff-Appellant,

v.

MARKHON INDUSTRIES, INC.,
Defendant-Appellee.

No. 85–1054.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1985.

Decided Jan. 16, 1986.

Thomas P. Yoder, Livingston Dildine Haynie & Yoder, Fort Wayne, Ind., for plaintiff-appellant.

John D. Walda, Barrett Barrett & McNagny, Fort Wayne, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

The plaintiff appeals the district court's determination that the defendant did not breach a stock option agreement. We affirm.

### I.

In June of 1975, the plaintiff, Charles G. Erff, interviewed with Honeywell, Inc. in Wabash, Indiana for the position of marketing director. During his initial interview, Mr. William G. McLaughlin, the manager of the Honeywell facility, informed Erff that McLaughlin and several other individuals had formed a new corporation, MarkHon Industries, ("MarkHon") and planned to purchase the Wabash plant. McLaughlin advised Erff that MarkHon was in the process of obtaining financing for the proposed transaction and that if the transaction was successful, Erff would be hired as the marketing director of MarkHon and he would have an opportunity to purchase shares of common stock in the corporation. Erff returned to Wabash for a second interview on July 17 and 18, received an offer of employment, and became the marketing director of the Honeywell Wabash division on September 1, 1975.

During its negotiations with Honeywell, MarkHon explored several financing options, including a public offering of its stock. Although it drafted several proposed prospectuses before the closing, none were approved by MarkHon's board of directors or formally issued. On November 1, 1975, MarkHon purchased the Wabash facility and Erff became a MarkHon employee. The corporation issued stock on November 10, 1975, and the plaintiff purchased 3,350 shares at the price of $7.00 per share.

On January 20, 1976 the MarkHon board of directors discussed and adopted a stock option plan contained in a draft prospectus dated September 12, 1975:

> "Mr. McLaughlin reported that it had come to the attention of the staff that the option contained in the prospectus completed September 12, 1975, by which the present officers of the Corporation were granted an option to purchase Five Thousand Four Hundred Eighty (5,480) shares from the common capital stock of the corporation through September 1, 1980 at Ten Dollars ($10.00) per share had not been included in the minutes of the meeting of the Board. The prospectus was reviewed, and each of the Board members in office at that time acknowledged that the matter had been implicitly approved prior to the September 12, 1975 prospectus. Accordingly, the following resolution was presented:

> RESOLVED THAT, pursuant to the prospectus presented to stockholders dated September 12, 1975, the Corporation grants stock options to present officers at Ten Dollars ($10.00) per share for Five Thousand Four Hundred Eighty (5,480) shares of the common capital stock of the Corporation, which option shall expire September 1, 1980, each officer holding an option to purchase shares equal to Twenty Percent (20%) of the original shares subscribed for by said officers, as follows: ... Charles R. [sic] Erff, 670 shares."

Sometime during 1976, MarkHon's accountant informed MarkHon that the resolution in the January 20, 1976 corporate minutes did not constitute a stock option plan. On June 21, 1977 the company adopted a revised stock option plan explicitly providing that the stock options terminated at the time the employee ceased employment with the company: *"Termination of employment:* If the employment of the grantee terminates, otherwise than by death, all rights under option shall lapse."

On July 7, 1978, McLaughlin informed Erff that his job performance had been unsatisfactory and his employment status with MarkHon was terminated. In December of 1978, the plaintiff, through his agent, a Mr. Jones, contacted MarkHon and attempted to exercise his stock option. Both Mr. Erff and Mr. Jones were informed by MarkHon that his right to exercise a stock option terminated simultaneously with the time he left MarkHon's

employment. On January 8, 1979, the plaintiff sold 3,345 shares in MarkHon, retaining five shares. On August 20, 1980, shortly before the stock option was to expire, Erff again attempted to exercise his option by tendering a check to MarkHon. The corporation returned the check and once again advised Erff that his option to purchase stock under the stock option plan had terminated when he left MarkHon's employment.

Some two years later, Erff filed suit in the United States District Court for the Southern District of Indiana alleging that in the summer of 1975 he and MarkHon entered into an oral employment agreement. According to Erff's complaint, he agreed to accept employment with MarkHon and to purchase 3,350 shares of MarkHon stock at $7.00 per share and MarkHon granted Erff an option to purchase an additional 670 shares (20 percent of his original subscription) at $10.00 per share. Thus, under Erff's complaint, MarkHon's offer of a stock option was binding because his entering into employment with MarkHon and his purchase of 3,350 shares of MarkHon stock constituted an acceptance of the offer. MarkHon denied offering a stock option to Erff during the June and July employment interviews and argued that the stock option contained in the January 20, 1976 Board resolution was a unilateral offer exercisable only by employees currently working for MarkHon. According to MarkHon, Erff failed to accept this unilateral offer before he left MarkHon's employ.

At trial, Erff asserted that as a goal of his job search in 1975, he sought "an entrepreneurial opportunity ... a significant equity ownership position in a relatively small business." Erff testified that during the June employment interview, McLaughlin had shown him a prospectus stating that 3,350 shares had been reserved for the new marketing director of MarkHon. Erff further contended that McLaughlin had promised him an option to purchase additional shares at a later time. Erff placed in evidence two draft prospectuses, dated July 23, 1975 and September 12, 1975 specify-

ing: "The Company has granted an option to present officers and the future Marketing Director at $10.00 per share for 5,480 shares that will expire September 1, 1980. These options represent 20% of the original stock subscription by these officers." McLaughlin, on the other hand, denied offering to Erff a stock option at the interviews. Moreover, McLaughlin testified that the draft form of the prospectus in existence at the time of Erff's interviews specified: "There is no stock option plan in effect and none is presently under consideration." According to McLaughlin, the July 23 draft prospectus Erff claimed to have received in his June and July 17 and 18 interviews, was prepared on July 23, 1975 following the Board meeting of July 22, 1975.

The district court, after presiding over a bench trial, denied the plaintiff's claim, holding that there was no stock option plan in existence at the time Erff interviewed with McLaughlin in June and July of 1975 because the corporation had not issued stock, there was no paid-in capital, and no stock option plan had been authorized by the board of directors. Additionally, the court found that even if McLaughlin had entered into an oral employment contract with Erff concerning the stock option, under Indiana law the alleged oral agreement made by the corporation's agent, McLaughlin, would have had to have been expressly ratified by the MarkHon board of directors before it became effective. Since the record of the company's board meetings failed to recite any express ratification by the board of an employment contract with Erff providing for a stock option, the court held that Erff failed to prove the existence of a binding oral employment agreement containing a stock option plan between Erff and McLaughlin or Erff and MarkHon.

## II.

On appeal, Erff does not challenge the district court's conclusion that a stock option was not offered to him during his

employment interview with McLaughlin in June and July of 1975. Rather, Erff contends that he has "consistently raised *two* distinct theories against MarkHon." (emphasis his). The district judge explicitly rejected his first theory: "That the stock option was offered to him by MarkHon when he interviewed for the position of Marketing Director and upon his acceptance of employment with MarkHon his stock option rights vested and could not thereafter be unilaterally amended to require that he exercise the option prior to the termination of his employment with MarkHon." Erff argues to this court that the trial court failed to address his second theory of recovery: "That the stock option was offered to him on or before September 12, 1975 and, upon Erff's November 5, 1975 purchase of 3,350 shares of MarkHon stock, the option vested and could not be unilaterally amended to require that Erff exercise the option prior to the termination of his employment with MarkHon." In response to the defendant's protest that this "second theory of recovery" was never presented to the trial court, Erff contends that his second theory of recovery "was properly raised in the pre-trial order controlling the trial of this case." Erff cites *Hernandez v. Alexander,* 671 F.2d 402 (10th Cir.1982) and *United States v. Texas,* 523 F.Supp. 703 (E.D.Tex.1981) as support for the proposition that "issues raised in a pre-trial order supersede those presented in the original pleadings and govern the trial of the case." Erff reasons that because he raised his second theory of recovery in the pre-trial order, the district erred by "failing to make findings of fact and conclusions of law with respect to the legal and factual issues implicit in Erff's second theory of recovery." Specifically, Erff argues that, "the trial court fail[ed] to determine when [the unilateral offer documented in the Board minutes of January 20, 1976] was first made." Additionally, Erff states that the district court judge erred in failing to determine whether "upon Erff's November 5, 1975 purchase of 3,350 shares of MarkHon's stock, the option vested and could not be unilaterally amended to require that

Erff exercise the option prior to the termination of his employment with MarkHon." Erff contends that substantial evidence supports his second theory of recovery and if the district court had addressed the second theory of recovery, it would have been compelled to find that the stock option had been offered prior to his purchase of MarkHon stock and that his purchase constituted an acceptance making the Board's offer binding.

Initially we note that the alleged "second theory of recovery" differs from Erff's contention that he was offered a stock option plan during his employment interviews. Specifically, under the second theory of recovery the stock option was offered to Erff "on or before September 12, 1975" rather than during the June and July interviews and Erff's acceptance of employment with MarkHon was not a term or condition of the stock option agreement. Indeed, Erff's second theory of recovery raises distinct legal issues: (1) whether the January 20, 1976 Board action expressly ratified a prior offer of a stock option and whether the terms of the prior offer specified that the option lapsed if the employee left MarkHon before exercising the option; (2) whether the reference to "present officers" in the January 20 resolution was an expression of the Board's intent that the option expire on termination of employment; and (3) whether the January 20 Board resolution effectively created a stock option plan and, if it did, whether the stock option plan was in effect on September 12, 1975 prior to Erff's purchase of 3,350 shares of MarkHon stock. Because Erff's second theory of recovery (that the offer was made "on or before September 12, 1975" and that his purchase of 3,350 shares constituted an acceptance of the offer) is substantially different from the theory rejected by the district court (the oral employment contract theory), we must examine the pleadings to determine whether the second theory of recovery was presented to the district court.

A district court judge may schedule a pre-trial conference for the parties to

"consider and take action with respect to (1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses; [and] (2) the necessity or desirability of amendments to the pleadings." Fed.R.Civ.P. 16(c). Attendance at the pre-trial conference by the party or his attorney is mandatory. *Id.* at 16(f). Attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be. *Payne v. S.S. Nabob,* 302 F.2d 803 (3rd Cir.), *cert. denied,* 371 U.S. 870, 83 S.Ct. 136, 9 L.Ed.2d 107 (1962); *Cherney v. Holmes,* 185 F.2d 718 (7th Cir. 1950). After the final pre-trial conference, the district court judge enters a pre-trial order "reciting the action taken." *Id.* at 16(e). "This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pre-trial conference shall be modified only to prevent manifest injustice." *Id.* Because the parties rely on the pre-trial conference to inform them precisely what is in controversy, the pre-trial order is treated as superseding the pleadings and establishes the issues to be considered at trial. *In-Sink-Erator Mfg. Co. v. Waste King Corp.,* 346 F.2d 248, 251 (7th Cir.), *cert. denied,* 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78 (1965).

An examination of Erff's complaint reveals that he contended that he entered into "an oral employment agreement" with MarkHon during the summer of 1975. According to the complaint, Erff agreed to resign his employment with his present employer, entered into employment with MarkHon, and purchased 3,350 shares of MarkHon stock "upon the terms and conditions set forth in the prospectus issued by Defendant and shown to Plaintiff." Furthermore, the complaint alleged:

"The terms of the employment contract, including the agreement whereby plaintiff purchased said Three Thousand Three Hundred and Fifty (3,350) shares of common stock of defendant, included

an express option to purchase additional shares, to wit: that plaintiff (and other original stockholders) were granted an option to purchase shares equal to Twenty Percent (20%) of the original shares subscribed for, at a price of Ten Dollars ($10.00) per share, which said option plan would expire September 1, 1980. Said agreement was confirmed by corporate resolution dated January 20, 1976."

In response to the defendant's discovery, the plaintiff continued to insist that the contract was formed before he accepted employment with MarkHon and that accepting employment was a condition of the contract:

"The oral agreement which forms a basis for this lawsuit was entered into between plaintiff and William G. McLaughlin, a President of MarkHon during the months of July or August of 1975, *prior to the day plaintiff accepted employment with defendant....* Although there are no specific documents which embodied this agreement, MarkHon's July 23, 1975 and September 12, 1975 prospectuses set forth the general terms of the stock option available to plaintiff.

\* \* \* \* \* \*

Plaintiff performed all of the terms and conditions of the stock option agreement *including accepting employment with defendant,* purchasing shares of defendant's stock, notifying defendant of his intention to exercise his stock option and tendering the certified check to defendant ... prior to the September 1, 1980 expiration date."

(emphasis added).

In his proposed pre-trial order submitted to the district court judge, Erff stated "the parties do not anticipate any amendments to the pleadings."[1] Erff points to the following passages in the pre-trial order as raising his second theory of recovery:

"Following commencement of his employment with MarkHon, plaintiff pur-

---

1. Although the parties were unable to agree on the final form of the pre-trial order, the pre-trial order adopted by the trial court contained the passages allegedly raising the second theory.

chased Three Thousand Three Hundred Fifty (3,350) shares of defendant's stock. Plaintiff relied upon the availability of an option to purchase additional shares of stock in making the decision to purchase these shares of stock.

1. Whether MarkHon offered plaintiff an option to purchase additional shares of its stock upon his accepting defendant's offer of employment and his purchase of shares of its stock.

3. Whether plaintiff relied upon the option in accepting employment with defendant and in purchasing shares of MarkHon stock.

1. Whether there existed an enforceable stock option agreement either at the time plaintiff accepted employment with MarkHon or when he purchased defendant's stock."

However, an examination of the plaintiff's proposed pretrial order reveals that he has selectively quoted that order to his advantage:

"D. *Plaintiff's Contentions.*

In the summer of 1975, the parties entered into discussions concerning the possibility of plaintiff accepting employment with defendant in the capacity of Marketing Director. During one of these discussions, plaintiff informed MarkHon's President, William McLaughlin, that his acceptance of employment with defendant would be contingent upon his ability to obtain an ownership interest in the corporation. McLaughlin assured him that, upon accepting employment with the defendant, plaintiff would be immediately entitled to purchase shares of defendant's stock and also have an option to purchase additional shares of defendant's stock at a later date.

In connection with these discussions, McLaughlin delivered MarkHon's prospectus to plaintiff; this prospectus included provisions which substantiated McLaughlin's statements that the new Marketing Director would be entitled to purchase shares of defendant's stock immediately and also have the option to purchase additional shares of defendant's

stock up to twenty percent (20%) of this original subscription for the price of Ten Dollars ($10.00) per share. This option would expire September 1, 1980. There was no requirement that the option had to be exercised prior to the termination of Erff's employment with the defendant."

 As we have recently emphasized, "the district court need not investigate the evidence for arguments that might possibly support [the plaintiff's] claim: it was the *plaintiff's* responsibility to raise the *arguments* that it seeks to use now on appeal." *Libertyville Datsun Sales, Inc. v. Nissan Motor Corp.,* 776 F.2d 735, 737 (7th Cir. 1985) (emphasis in original). "In our view, a trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." *Id. quoting Desert Palace, Inc. v. Salisbury,* 401 F.2d 320, 324 (7th Cir.1968). A judge is not obligated and must not become an active participant in any litigation before him. Because the plaintiff failed to properly present to the district court in a lawyer-like fashion the arguments supporting his second theory, he did not disclose to the district court in the pre-trial conference the theory on which he now attempts to rely. Since Erff failed to raise his second theory of recovery in the district court, the district court judge was only required to decide whether MarkHon offered Erff a stock option during his employment interviews; the court was not obligated to determine whether a stock option was offered to Erff "on or before September 12, 1975" or whether "upon Erff's November 5, 1975 purchase of 3,350 shares of MarkHon's stock, the option vested and could not be unilaterally amended to require that Erff exercise the option prior to the termination of his employment with MarkHon."

 We have repeatedly held that "it is axiomatic that arguments not raised below are waived on appeal." *Libertyville,* at 737; *Wagner v. Retail Credit Co.,* 338 F.2d 598, 601–02 (7th Cir.1964) ("Defendant

cannot be permitted to shift its theory after it arrives in this court"). We hold that because the plaintiff failed to raise the second theory of recovery in the district court, the issue is deemed waived and will not be considered for the first time on appeal. Because Erff failed to raise his "second theory of recovery" in the district court, our review is confined to the question of whether substantial evidence supports the district court's rejection of his "first theory of recovery"—*i.e.*, whether a stock option was offered to him during his employment interviews. The district court found, "There is no basis for plaintiff's claim that he received a draft of a prospectus dated July 23, 1975, during his June 1975 interview with McLaughlin because that draft prospectus was not in existence at the time of the June interview." Moreover, the district court determined that there was no stock option plan in existence at the time Erff interviewed with McLaughlin in June and July of 1975 because the corporation had not issued stock, there was no paid in capital, and no stock option plan had been authorized by the board of directors. Furthermore, the judge noted that the record of the company's board meetings failed to recite any express ratification by the board of an employment contract with Erff providing for a stock option. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). We hold that the district court's findings of fact and judgment are supported by substantial evidence in the record.

The decision of the court is AFFIRMED.