Samuel H. YOUNG, Executor of the estate of John F. Wellman, Deceased, Plaintiff–Appellant,

v.

Patrick T. MURPHY, Individually, and as Public Guardian of Cook County, Thomas L. Cowlin, Mark A. Amdur, Medical Doctor, et al., Defendants–Appellees.

No. 95–2106.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 5, 1996.

Decided July 22, 1996.

Samuel J. Betar, III, Arnold & Kadjan, Chicago, IL, Samuel H. Young (argued), Lincolnwood, IL, for Samuel H. Young.

Terry L. McDonald, Julie L. Mulderink (argued), Office of the State's Attorney of Cook County, Federal Litigation Division, Chicago, IL, for Patrick T. Murphy and Thomas L. Cowlin.

Michael A. Pollard (argued), Norman J. Barry, Jr., Baker & McKenzie, Chicago, IL, for Mark A. Amdur.

Jacqueline M. Zydeck, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Joseph Ponsetto and Timothy Reynolds.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

John Wellman, an elderly businessman, possessed considerable assets but had no wife, no children, and no living relatives to whom to bequeath his wealth. Then he met Samuel Young, an attorney, who befriended him in the course of handling his business and personal affairs. Young was not paid for his counsel, but through a series of letters to Young Wellman indicated that upon his death he wished for Young to inherit his assets in return for his service and friendship. Wellman also signed letters indicating a desire to avoid probate and to have Young added to his various accounts as joint tenant. But when Young attempted to do so, a bank officer became suspicious and notified state officials who initiated a criminal investigation of Young and a competency investigation of Wellman pursuant to various Illinois statutes designed to protect the elderly. Based on the state's investigative reports, an Illinois circuit court declared Wellman incompetent and placed a public guardian in charge of Wellman's affairs. After considerable effort and expense, Wellman's attorney and friend, Young, succeeded in having the court restore Wellman to full capacity. Subsequently Wellman executed a will leaving his estate to Young, then died. As executor of his estate, Young filed this federal civil rights suit on Wellman's behalf against the public officers involved in the investigation and prosecution of the original incompetency hearing, seeking to recover for the estate the legal costs of having Wellman's competency restored. The district court dismissed the majority of the suit for failure to state a claim upon which relief can be granted and granted summary judgment for the defendants on the remaining claim. We affirm the dismissal but reverse the entry of summary judgment with instructions to dismiss for lack of jurisdiction.

## I.

The facts of this case are contested and the inferences to be drawn from those facts even more so. However, this case concerns neither the facts nor their inferences but the sufficiency of the complaint and the jurisdiction of federal courts. The district court dismissed most of Young's suit because even the third amended complaint, read in the most liberal manner, failed to allege actionable constitutional claims. The one remaining claim was decided on summary judgment because the court considered evidence outside the complaint in deciding the issue.

*The Facts Alleged in the Complaint*

Because this case addresses the sufficiency of Young's third amended complaint, we review in detail the complaint's factual allegations: By the time he died at age 90, John

Wellman had amassed a small fortune of roughly $590,000, invested in treasury bills, a savings account, and a brokerage account. After meeting and becoming acquainted in 1986, Young assisted Wellman with the preparation of his tax returns, negotiated contractual lease arrangements, investigated residences for Wellman, obtained medical, hospital, and nursing home services for Wellman, provided "social and familial relations," and became a close personal friend. In March of 1988, Wellman signed a letter addressed to Young advising that as Wellman had no family he wished for Young to handle his affairs in the event he became incapacitated. In December of 1988, Wellman signed a document designating Young as his agent under a durable power of attorney. About one year later, Wellman told Young he wished for Young to assist him for the rest of his life in managing his personal and business affairs, in return for which Young would inherit his property upon his death. Wellman signed a letter memorializing this conversation on November 14, 1989, and also indicated that he wished for Young to transfer his accounts into accounts held in joint tenancy with Young.

In December of 1989, Young contacted Andrew Vlahos, an officer at the Federal Reserve Bank of Chicago and a trusted financial advisor and friend of Wellman's, about the transfers. This apparently triggered Vlahos's suspicions and he contacted the Illinois Attorney General's Office and requested that they investigate whether Young was exploiting Wellman in violation of Illinois law. Following Vlahos' notification, assistant attorney general Ann Parisi interviewed Wellman on December 21 concerning his relationship with Young. Based upon this interview and Parisi's conclusion that Young was exploiting Wellman,[1] the attorney general's office initiated a grand jury investigation to determine whether Young was violating the Financial Exploitation of an Elderly or Disabled Per-

son Statute, 720 ILCS 5/16–1.3, and notified the Public Guardian of Cook County's office that Wellman might require a guardian. The public guardian's office assigned deputy public guardian Thomas Cowlin to the case and engaged psychiatrist Mark Amdur, M.D. to assess Wellman's mental condition.

Assistant attorneys general Ponsetto and Reynolds, accompanied by a police officer, interviewed Young in his office on January 22, 1990. At the interview, Young furnished Ponsetto and Reynolds with a January 19 letter signed by Wellman stating that he had made no complaints concerning Young. Following the meeting Ponsetto and Reynolds drafted a memo notifying their boss that they were pursuing the investigation of Young. In their memo they concluded, "Mr. Young is an ex-United States Congressman from the North Shore and is highly agitated (i.e., probably guilty)." A letter dated January 23 and signed by Wellman advised Parisi that if he wished to speak with Wellman he should notify his attorney Young so that Young could be present.

On January 25, 1990, public guardian's office social services director Louise Woodard and Dr. Amdur arrived at Skokie Meadows Nursing Home to conduct a mental examination of Wellman. While they were examining Wellman's medical and nursing home records prior to conducting the examination, Young arrived. He "permitted" the oral examination of Wellman as long as he was present. The examination thereafter was conducted in Young's presence. A January 27 notation in the public guardian's Office records indicates "Dr. Amdur doesn't feel Wellman needs a guardian—will do second visit." Thereafter, Cowlin directed Woodard and Amdur to conduct a second mental exam of Wellman. Young was notified of the impending second examination and wrote a letter to Woodard advising that Wellman "did not wish any further interviews."

---

1. The complaint characterizes the interview as objectively unreasonable but alleges no factual basis for this conclusion. Ms. Parisi filed a written report in which she quoted Wellman as expressing grave reservations about Young. The report is in the record but is not part of the complaint. However, it is relevant to understand the ensuing behavior of the various govern-

ment officers. According to Parisi, Wellman insisted that Young was not his friend; that he did not trust Young; that he did not want his accounts changed; that Young had him sign papers he did not understand or had not been able to read; that he felt as if he had been manipulated; and that he would cooperate with the attorney general's office in any way.

Dr. Amdur and Woodard nevertheless conducted a second mental examination on March 9, 1990. They were accompanied by two police officers dispatched by Reynolds and Ponsetto with instructions to prevent Young from interfering with the examination. In addition to conducting a second mental examination, Amdur and Woodard examined the nursing home's records pertaining to Wellman. Based upon the second mental examination, Dr. Amdur completed a report advising of his examination and concluding that Wellman suffered from dementia and manic psychosis and was "totally incapable of making both personal and financial decisions."

On March 30, based upon Dr. Amdur's report, the public guardian petitioned the Circuit Court of Cook County to appoint a plenary guardian for Wellman. On May 8, 1990, the Circuit Court held a hearing at which neither Wellman nor Young was present. At the hearing, Ponsetto advised the court that the Illinois Attorney General's office was conducting a criminal investigation of an unnamed attorney who had transferred Wellman's accounts into joint tenancy. Ponsetto asked the court to appoint the public guardian to oversee Wellman's financial affairs. Cowlin testified and provided the court with Dr. Amdur's report, however Amdur did not testify personally. Based upon the evidence before it, the court issued an order adjudicating Wellman incapable of making decisions as to his property and person pursuant to the Illinois Guardian for Disabled Adults Act.

The public guardian assumed control of Wellman's person and affairs, changing Wellman's mailing addresses with banks and other entities, and prohibiting him from leaving the premises of the nursing home to travel, shop, or visit without permission from the public guardian. He denied Wellman permission to share what would be his last Thanksgiving dinner with Young. And he filed a petition to revoke the durable power of attorney Wellman had signed appointing Young as his agent.

Over a year later, after the persistent legal efforts of Young and another attorney, the matter was revisited by the court. On June 3, 1991, following a trial at which 30 witnesses, including Wellman, testified, the circuit court entered a final judgment order restoring Wellman to full legal capacity. On July 3, 1991, Murphy was discharged as Wellman's guardian. On August 17, 1991, Wellman died. Young subsequently filed this federal civil rights suit on behalf of Wellman's estate, seeking to recover $669,-086.70, which he alleges he expended on legal fees and costs in his thirteen-month effort to restore Wellman's competence.[2]

*The District Court's Dismissal*

Aside from characterizing every action by the defendants throughout the complaint as variously, "without an objectively reasonable belief," "wrongfully," "in violation of Wellman's rights," or as "planning, confederating, and conspiring," the third amended complaint alleged violations of a number of amorphous and ill-defined state and constitutional rights. Nevertheless, the district court sorted out Young's constitutional claims as follows: Wellman's "first amendment" right to associate with counsel, his right to be free from unreasonable searches and seizures, his right to be afforded due process in the guardianship proceedings and his right to equal protection. The court dismissed the "first amendment" right to associate with counsel and the fourth amendment claims because the defendants were entitled to qualified immunity. It dismissed the equal protection claim as waived. It refused to exercise jurisdiction over a number of claims which can be charitably characterized as arising under state law. Finally, because the court examined outside evidence that Wellman had received notice of the May 8, 1990 hearing, the court granted summary judgment for the defendants instead of dismissing the due process claim.

Curiously, following the district court's dismissal of the balance of his third amended complaint, Young filed a motion for summary judgment on the claims that had been dismissed. Young had not sought leave to file

---

2. We find this sum extraordinary, but because of our disposition of this case we have not reviewed the voluminous expense records submitted by Young in support of this claim.

such a motion and the district court granted defendants' motion to strike it as an untimely and thus improper filing. The district court subsequently denied Young's motion to reconsider the order striking his motion for summary judgment. Young's appeal acknowledges that the balance of his third amended complaint was dismissed pursuant to F.R.C.P. Rule 12(b)(6), yet throughout his brief he characterizes this as an appeal of the district court's denial of his motion for summary judgment. However that motion was struck and Young has not pursued any argument that the district court abused its discretion by doing so. *DeBruyne v. Equitable Life Assur. Soc. of the U.S.*, 920 F.2d 457, 470 (7th Cir.1990) (denial of motion to reconsider reviewed under abuse of discretion standard). Because the court struck Young's motion for summary judgment there is no denial of plaintiff's motion for summary judgment for this court to consider. Thus, we consider Young's appeal of the district court's dismissal of the third amended complaint and its entry of summary judgment for the defendants on the due process claim to the extent those issues were properly before the court.

### II.

#### A. *Jurisdiction*

■ Before we consider whether the district court correctly decided the issues before it, we must ascertain whether those issues were in fact properly before the court. If the court lacked subject-matter jurisdiction over the claim then even an appropriate analysis on the merits is moot. And because jurisdiction cannot be waived by the parties, we must confront the issue even where (as here) the parties have not. *Levin v. Attorney Registration and Disciplinary Comm'n*, 74 F.3d 763, 766 (7th Cir.1996); *Ritter v. Ross*, 992 F.2d 750, 752 (7th Cir.1993) (raising jurisdictional question sua sponte), *cert. denied*, —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

■ The jurisdictional impediment to this case is what has come to be known as the *Rooker–Feldman* doctrine. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct.

149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine articulates the limitations on the district court's power to review state court civil proceedings, and holds that since Congress vested district courts only with original jurisdiction, lower federal courts have no jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486, 103 S.Ct. at 1317. Thus, "[l]ower federal courts lack jurisdiction to engage in appellate review of state-court determinations," *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir.1993) (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 21, 107 S.Ct. 1519, 1531, 95 L.Ed.2d 1 (1987) (Brennan concurring), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994)), or to consider collateral attacks on state court civil judgments. *GASH Associates v. Village of Rosemont, Illinois*, 995 F.2d 726, 727 (7th Cir.1993). Beyond the limited authority to examine state judicial proceedings pursuant to habeas corpus review of certain custodial situations, *see, e.g.,* 28 U.S.C. § 2241, district courts have no authority to review the proceedings or final judgments of state courts. *Feldman*, 460 U.S. at 482, 103 S.Ct. at 1314–15. As a result, litigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court. *See, e.g., Wright v. Tackett*, 39 F.3d 155, 157–58 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995), *Garry v. Geils*, 82 F.3d 1362, 1368 (7th Cir.1996). Indeed, only the Supreme Court has congressional and constitutional authority to review state proceedings. U.S. CONST. art. III, § 2; 28 U.S.C. § 1257. Federal district and appellate courts have no jurisdiction over such appeals.

■ While 42 U.S.C. § 1983 creates a civil cause of action against public officials for violating a person's constitutional rights, that cause of action is constrained by the jurisdictional principles of *Rooker–Feldman*. *Ritter v. Ross*, 992 F.2d at 754 (citing cases). Thus,

a court must closely examine a federal § 1983 complaint to determine whether the litigant challenges the underlying procedure as unconstitutional or instead seeks review of the state court judgment in his case. "The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d at 1365. "The distinction is often difficult to draw." *Ritter v. Ross*, 992 F.2d at 754 (citations omitted). The Supreme Court in *Feldman* declared that constitutional claims that are "inextricably intertwined" with state court judgments of necessity call upon the district court to review the state court decision and are thus beyond the district court's jurisdiction. 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16. In this case, Young alleges the defendants violated Wellman's right to due process when the circuit court conducted Wellman's competency proceeding without providing notice to either Wellman or Young. Young further alleges that the burden of proof in the proceeding violated Wellman's right to due process. However Young does not challenge the constitutionality of Illinois' probate law's notification or burden of proof requirements in general. Rather he specifically seeks to have the district court review the specifics of Wellman's state incompetency proceeding, declare it error, and provide damages to Wellman's estate for the error.

Cases dealing with *Rooker–Feldman* generally address instances where the underlying harm alleged in the complaint has gone unrectified. See, e.g. *GASH Associates v. Village of Rosemont, Illinois*, 995 F.2d 726 (suit against village over foreclosure sale price of property), *Ritter v. Ross*, 992 F.2d 750 (suit against county treasurer over tax foreclosure). In this case we are presented with a situation where Young has already rectified the consequences of the allegedly unconstitutional state proceeding through the fully litigated restoration of Wellman to full competency in state court. Therefore Young would suggest that his suit is neither an appeal of, nor a collateral attack upon, the earlier incompetency proceeding. But attacking the effects of that judgment is exactly what he is doing. Wellman's injury

resulted from the state court judgment of incompetency and not from the alleged denial of due process. Had he prevailed in the May 8 hearing (where Wellman was declared incompetent and a guardian appointed), despite the alleged due process errors, he would have had no injury and no constitutional claim to bring before the district court. Thus, Young is really claiming Wellman's injury resulted from the state court judgment rather than the due process afforded by Illinois probate courts. We articulated this distinction in *GASH Associates v. Village of Rosemont, Illinois*, in which a real estate partnership sued defendant village for intentionally initiating a condemnation proceeding in order to suppress the price of *GASH*'s real estate at a foreclosure auction: "[Plaintiff] did not suffer an injury out of court and then fail to get relief from state court; [his] injury came from the judgment [itself]." 995 F.2d 726, 729 (7th Cir. 1993). Thus we held that "the *Rooker Feldman* doctrine barred the litigation because plaintiffs' injury stemmed from the state judgment—an erroneous judgment, perhaps, entered after proceedings said to be unconstitutional, but a judgment nonetheless." *Id.* at 728. *See also Garry v. Geils*, 82 F.3d 1362, in which we concluded that a suit alleging that the locating of a ditch across plaintiffs' property was unconstitutional political retaliation was barred by *Rooker–Feldman* as an attack on the court judgment condemning plaintiffs' property. Similarly, here *Rooker–Feldman* bars this claim, even though the original state judgment of incompetency may have been erroneous, because the injury resulted from the state court judgment itself.

We also note that because Wellman's competency was later restored does not necessarily suggest that a due process violation occurred in the first place. When the circuit court allegedly denied Wellman's right to due process and ruled him incompetent, Young had several courses available in his effort to release his friend from the grasp of the public guardian. Wellman could move to vacate the order. *See, e.g., In re Estate of Steinfeld*, 158 Ill.2d 1, 196 Ill.Dec. 636, 641, 630 N.E.2d 801, 806 (1994) (guardianship or-

der void for lack of personal jurisdiction may be attacked either directly or collaterally at any time). He also could have appealed the adjudication directly to the Appellate Court of Illinois, alleging the procedural defects he presents here. See, e.g., *In re Estate of Ohlman,* 259 Ill.App.3d 120, 197 Ill.Dec. 9, 13, 630 N.E.2d 1133, 1137 (1994) (Illinois appellate court has jurisdiction over appeal of appointment of guardian pursuant to Ill. St. S.Ct. Rule 304(b)(1)). Wellman chose the former and moved to vacate the order due to the alleged violation of due process. On October 10, 1990, the circuit court denied the motion, ruling that Wellman had received notice of the initial hearing as required by Illinois law.[3] Wellman then appealed the denial of his motion to vacate on October 17, 1990. The parties and the record are silent about the course of Wellman's appeal, however we note that in three consolidated cases captioned *In re Estate of Wellman,* the Supreme Court of Illinois on January 31, 1996 allowed appeal of the decisions below. 165 Ill.2d 551, 214 Ill.Dec. 99, 660 N.E.2d 544 (1996) (consolidating cases); 165 Ill.2d 551, 214 Ill.Dec. 859, 662 N.E.2d 425 (1996) (allowing appeal).[4]

Young again petitioned the circuit court to reconsider its earlier decision and to restore Wellman, this time pursuant to Ill.Rev.Stat. ch. 110-1/2, para. 11a-20 (1989) ("Termination of Adjudication of Disability") (since recodified as 755 ILCS 5/11a-20). The circuit court considered the petition along with a petition by the public guardian to revoke the durable power of attorney Wellman had signed appointing Young as his agent prior to being adjudicated incompetent. Following a lengthy trial with testimony from 30 witnesses, including Wellman, the court denied the public guardian's petition and restored Wellman. The procedure Young employed to restore Wellman to full competency did not require the circuit court to conclude that the initial procedure had been either in error factually or procedurally defective. For example, the circuit court could have concluded that the initial procedure was proper, that Wellman had been incompetent, but now was again competent. In this case the circuit court ruled that Wellman had in fact been competent initially, in effect admitting that its preliminary factual determination had been incorrect. However it did not determine that Wellman had been denied proper notice, that Young should have been notified, or that the burden of proof at the earlier proceeding had been unconstitutional. Thus, despite the fact that the *outcome* of the initial hearing was reversed, the initial hearing still stands procedurally intact and, as far as this court can be concerned, procedurally correct. Young's complaint that Wellman was denied due process challenges the outcome of that hearing through a suit for damages. Thus, under *Rooker–Feldman,* the district court had no jurisdiction over that challenge.

■ In addition to challenging the hearing itself, Young challenges as unconstitutional various decisions made by the public guardian during the period when Wellman was adjudicated incompetent. For example, Young alleges Wellman was deprived of rights "secured by the fourth and fourteenth amendments" when the public guardian changed Wellman's legal address and the names on his accounts, as well as when he refused to permit Young to take Wellman to Florida to see if Wellman wanted to move there. Young does not challenge the public guardian's right in general to control the

---

3. As noted above, evidence was submitted to the district court that Wellman actually received notice and was appointed a guardian *ad litem.* The defendants argue that is all Illinois law required. Young argues Illinois law required more. It is exactly this federal case-by-case review of the adequacy of state civil proceedings that *Rooker–Feldman* precludes.

4. The pending state claim might also preclude the federal courts from considering this matter under the abstention principles announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See, e.g., Ritter v. Ross,* 992 F.2d at 755 (even if *Rooker–Feldman* doctrine were not a bar to action, that state provided other legal options being pursued by plaintiffs would compel court to dismiss complaint). The record is void of any reference to these pending appeals or to what issues they address. In any event, because we conclude the district court lacked subject-matter jurisdiction to consider the due process complaints we need not consider whether the district court should have abstained from considering the claim.

body and legal affairs of an adjudged incompetent. Instead he challenges the guardian's doing so in Wellman's case pursuant to an allegedly unconstitutional adjudication of incompetency. That begs the question of whether the proceedings were unconstitutional, a question we are precluded from considering or answering in this context. Therefore, Young's claims of constitutional violations stemming from the public guardian's exercise of his authority over Wellman pursuant to the May 8, 1990 incompetency hearing are also barred by *Rooker–Feldman.* When the injury alleged in the complaint derives from the judgment of the court, then the complaint is an attack on the judgment itself. *GASH, supra; Garry v. Geils, supra.* The one is inextricably intertwined with the other. Lower .federal courts do not have jurisdiction over complaints for injuries resulting from state court adjudications which would be unconstitutional only if the state court adjudication were in error. Therefore, the district court lacked jurisdiction over · Young's claims that Wellman's incompetency hearing and the public guardian's resulting administration of Wellman's affairs were unconstitutional.

## B. *Qualified Immunity*

█ While the district court lacked jurisdiction over Young's claim that the circuit court judgment deprived Wellman of due process rights, it properly exercised jurisdiction over the remaining constitutional claims. It dismissed those claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. We review this ruling *de novo*, accepting plaintiff's well-pleaded allegations as true and drawing all reasonable inferences in plaintiff's favor. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995). We do not accept as true unsupported conclusions of fact or of mixed fact and law. *Id.*[5]

The remainder of the complaint focused on constitutional violations alleged to have arisen from Wellman's second mental examination. Young alleges the defendants violated Wellman's first, fourth, and fifth amendment rights as applied to state actors by the Fourteenth Amendment. But before getting lost in the nuances of the complaint, it is important to focus on what exactly happened here.

The bank notified the state attorney general's office when Young, an attorney, attempted to place himself into joint tenancy on accounts belonging to an elderly client. The state attorney general's office initiated a preliminary investigation pursuant to Illinois' statutes governing the financial exploitation of elderly persons, a class 1 felony when the property in question is over $100,-000. 720 ILCS 5/16-1.3 *et seq.* Wellman allegedly told the assistant attorney general conducting the preliminary investigation that he did not trust Young, that he did not want his accounts changed, that Young had him sign papers he did not understand; essentially, that he thought Young was exploiting him. Based on this report, the investigation into Young was· expanded and the public guardian's office notified: The· latter initiated its own investigation to determine whether Wellman required the protection the public guardian's office is statutorily charged with providing. 755 ILCS 5/13-5 ("Powers and duties of public guardian"). The two agencies cooperated in their investigations. When Dr. Amdur, who was retained by the public guardian's office, attempted to conduct a mental examination of Wellman, Young interrupted. Young was the very person state officials were investigating for exercising undue influence over Wellman so state officials decided to conduct a second examination outside Young's presence. In the meantime, Young was dispatching letters to the investigators instructing that Wellman had not requested any investigation, that Wellman wanted Young present for any interviews, and that Well-

---

5. For example, absent factual allegations necessary to find the existence and operation of a conspiracy, inserting the words "conspired to" before verbs describing defendants' conduct does not require that we infer that a conspiracy existed. *See, Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir.1981) (delineating elements of civil conspiracy—mere unsupported conclusions and inferences not enough); *Searcy v. Singletary*, 894 F.Supp. 1565, 1572–73 (M.D.Fla.1995) (citing cases that conclusory, vague, and general allegations of conspiracy not enough).

man refused any further mental examinations. The state investigators pursued their investigation nevertheless. This was not only objectively reasonable, but failure to do so in the face of the information before them might have been a breach of their statutory duties. Had Young in fact been exploiting Wellman, he would have done exactly as he did—try to stop the state investigation. According to the circuit court, following a full probate hearing involving 30 witnesses, it turns out the investigators were mistaken. However, at the beginning of their investigation they did not have the benefit of 30 witnesses. So instead they went straight to Wellman and asked him some questions. Young alleges doing so violated Wellman's constitutional rights.

The complaint stated claims against five defendants who fell into three groups: state attorneys (two assistant attorneys general), public guardians (the Public Guardian of Cook County and a deputy public guardian), and a private doctor hired by the office of the Public Guardian of Cook County to evaluate Wellman's competency. Each group asserted qualified immunity as a defense and moved to dismiss the complaint accordingly. While there may have been other bases for dismissing certain parts of the complaint, *e.g.* absolute immunity or failure to state a claim, the district court elected to dispose of the remaining counts by granting the defendants' 12(b)(6) motions on the ground of qualified immunity.

■ "The defense of qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir.1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The state attorneys and public guardians were entitled to assert the defense because their duties in this instance required that they exercise discretionary government functions. *Harlow*, at 818, 102 S.Ct. at 2738. Dr. Amdur was also entitled to assert the defense because he was a private party acting under color of state law. *Williams v. O'Leary*, 55

F.3d 320, 324 (7th Cir.) (physician under contract to prison entitled to assert qualified immunity where physician was "performing duties that would otherwise have to be performed by a public official who clearly would have qualified immunity"), *cert. denied*, —— U.S. ——, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995).

■ This court has set out a two-part test to determine whether the actions of a government official are entitled to qualified immunity: "(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" *Zorzi v. County of Putnam*, 30 F.3d 885, 892 (7th Cir.1994) (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1210 (7th Cir.1988)). While normally this is a two-step analysis, where a plaintiff's complaint, "even when accepted as true, [does] not state a cognizable violation of constitutional rights, then the plaintiff's claim fails." *Id.* (quoting *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir.1993)). The plaintiff bears the burden of alleging such a right. *Id.* If the complaint fails to allege a cognizable violation of constitutional rights it also has failed to state a claim upon which relief can be granted, regardless of the status of the defendant at the time. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' ... [is] whether the plaintiff has asserted a violation at all.").

On behalf of Wellman's estate, Young alleged in his complaint numerous, somewhat amorphous violations of Wellman's constitutional rights, including "[t]he right to associate with and employ Young as an attorney and agent of his own choosing for the purpose of helping him conduct his private affairs including the planning of his estate and the disposition of said estate and to protect him respecting adverse action being taken against him by officers and agents acting under the color and authority of Illinois law secured by the First and Fourteenth Amendments to the United States Constitution." The complaint also alleged defendants violated Wellman's fourth amendment

right to be free from unreasonable searches and seizures and other invasions of his person. On appeal, Young now argues the right to counsel derived from the Sixth Amendment and that the alleged fourth amendment violations· arose from Wellman's second mental examination. He also now asserts that the examination also violated Wellman's right to remain silent, secured by the Fifth Amendment. The district court carefully reviewed the complaint. Our own review leads us to agree with the district court that Young failed to meet his burden of alleging a cognizable constitutional claim.

■ Young's claim that Wellman was denied a first amendment right to associate with counsel fails because Young has not cited nor have we found any case law supporting a first amendment right to associate with counsel in this context. On appeal Young argues that the Sixth Amendment provides the right. Not only has Young waived this argument by not presenting it to the district court, *see Erff v. MarkHon Industries, Inc.,* 781 F.2d 613, 618–19 (7th Cir. 1986); *Box v. A & P Tea Company,* 772 F.2d 1372, 1376 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986), it is a losing argument in any event. The Sixth Amendment to the U.S. Constitution provides

In all *criminal* prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense.

U.S. Const. Amend. VI (emphasis added). Unless involved in criminal litigation, a party possesses only a limited sixth amendment right to counsel. *See, e.g., Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (no right to counsel except in criminal prosecution and appeal); *Barkauskas v. Lane,* 946 F.2d 1292, 1294 (7th Cir.1991) (Sixth Amendment applies only to criminal cases); *Castaneda–Suarez v. Immigration and Naturalization Service,* 993 F.2d 142, 144 (7th Cir.1993) (because deportation hearings are civil proceedings, no sixth amendment right to counsel). Although the Supreme Court has carved very narrow exceptions to this rule, *Lassiter v. Department of Social Services of Durham County,* 452 U.S. 18, 32, 101 S.Ct. 2153, 2162,

68 L.Ed.2d 640 (1981) (indigent litigant in parental termination proceedings may have right to appointed counsel if potential deprivation of physical liberty exists, requires case by case analysis); *In re Gault,* 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967) (right to counsel in delinquency proceeding which may result in commitment to an institution), we have found no case support for the proposition that the right extends to mental examinations pursuant to a civil competency investigation. In fact, had this been a criminal instead of a civil investigation of Wellman, he still may not have been constitutionally entitled to counsel for a mental examination during the investigatory stage. *See, e.g., United States v. Cohen,* 530 F.2d 43, 48 (5th Cir.) ("we reject appellant's claim of a constitutional right to have an attorney present at the psychiatric examination since that might defeat the purpose of the examination and since the examination is not the kind of critical stage at which assistance of counsel is needed or even useful."), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *United States v. Van Engel,* 15 F.3d 623, 630 (7th Cir.1993) (right to counsel does not attach until adversary judicial proceedings—indictment, arraignment, information, or preliminary hearing—have begun), *cert. denied,* —— U.S. ——, 114 S.Ct. 2163, 128 L.Ed.2d 886 (1994). We thus cannot view a right to counsel in Wellman's case as clearly established. Furthermore, the complaint does not allege that Wellman requested or was denied counsel at the second medical examination, so the complaint fails to lay a factual basis for the claim that the defendants denied him such counsel.

■ On appeal Young now argues defendants also deprived Wellman of his fifth amendment right to remain silent during the March 9, 1990 mental examination. This argument was not raised by the complaint which in no place alleges a fifth amendment violation or alleges either that Wellman asserted a right to remain silent or even wished to do so, nor was it argued to the district court in opposition to the motions to dismiss. It was therefore waived. *Erff,* 781 F.2d at 618–19. Even were it not waived, the claim fails to satisfy Wellman's burden of

stating a cognizable constitutional claim. The Fifth Amendment to the U.S. Constitution provides that "No person ... shall be compelled in any *criminal* case to be a witness against himself...." U.S. Const. Amend. V (emphasis added). The Fifth Amendment is implicated if prosecution of the person questioned is among the purposes for the questioning. *See, e.g., Mathis v. United States,* 391 U.S. 1, 4, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381 (1968). Although the authorities were conducting a criminal investigation of Young, he is not personally the plaintiff in this case. The mental examination of Wellman, who is the plaintiff in this case, was pursuant to a civil competency evaluation. Young has proffered no case law extending a fifth amendment right to Wellman's situation. He has thus failed to meet his burden of demonstrating a clearly established constitutional right.

■ Young's allegation of violations of Wellman's fourth amendment right to be free from unreasonable search and seizures during the second mental examination on March 9, 1990 also fails to satisfy his burden of establishing a cognizable constitutional claim because Young provides no case law supporting such an argument. Nor has he pointed to any support for his fourth amendment claim based on allegations that Wellman was coerced into responding to Dr. Amdur's questions during the exam. Moreover, the complaint is devoid of any factual basis for this allegation. While police officers were present allegedly to prevent the nursing home staff from contacting Young or Young from interrupting the examination (as he had the first), the complaint nowhere alleges the police officers threatened, coerced, or intimidated, much less spoke to or were even seen by Wellman prior to or during the examination.

■ Young also alleges Wellman's fourth amendment rights were violated when the investigators examined the nursing home records reporting his condition and treatment. Young has failed to demonstrate that any such right has been clearly established. Young's complaint alleges no factual basis for concluding that Wellman had any possessory right in the records which would permit him to assert this claim. *See, e.g., United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (violation requires meaningful interference with an individual's possessory interests in property). The right against unreasonable searches and seizures is a personal right and generally may not be submitted on behalf of others. *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387 (1978); *United States v. Broadhurst,* 805 F.2d 849, 851 (9th Cir.1986). Hospital records are typically the property of the hospital rather than a patient. While Illinois law permits a patient to inspect and copy his records maintained by a hospital or physician, 735 ILCS 5/8–2001 ("Examination of Records"), there is no basis for concluding that this grants a property interest in those records to the patient. Because Young has alerted us to no other basis for regarding as unconstitutional the state's examination of Wellman's records, we conclude the defendants violated no clearly established constitutional right when they examined those records.

### III.

■ If a complaint fails to allege a clearly established constitutional violation against a public official, the defendant is entitled to qualified immunity. *Zorzi v. County of Putnam,* 30 F.3d 885, 892 (7th Cir.1994). Young has failed to allege such a claim with his third amended complaint. Accordingly, insofar as the district court possessed jurisdiction, it was correct in dismissing the complaint against defendants in this case and is affirmed. Because *Rooker–Feldman* barred jurisdiction over the due process complaint, summary judgment for defendants on that portion of the complaint is reversed and the case remanded for dismissal on that ground.

AFFIRMED in part; REVERSED in part with instructions.